IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **CHRISTOPHER G.**[1], | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 7:22-CV-00392 |
| | ) |
| **KILOLO KIJAKAZI,** | ) |
| **ACTING COMMISSIONER OF** | ) |
| **SOCIAL SECURITY,** | ) |
| | ) |
| **Defendant.** | ) |

**MEMORANDUM OPINION**

Plaintiff Christopher G. ("Christopher") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1381f. Christopher alleges that the Administrative Law Judge ("ALJ") erred by failing to properly determine his physical and mental residual functional capacities ("RFC") and improperly assessing his subjective allegations. Accordingly, I **GRANT** the Commissioner's Motion for Summary Judgment (Dkt. 17) and **DENY** Christopher's Motion for Summary Judgment (Dkt. 15).

**STANDARD OF REVIEW**

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Christopher failed to demonstrate that he was disabled under

---
[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). "The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case." Biestek, 139 S. Ct. 1148. The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Christopher first filed for disability insurance benefits in December 2014, claiming that his disability began on November 1, 2011.[3] The state agency denied Christopher's claims at the

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[3] Christopher's last date insured was June 30, 2018; thus, he must show that his disability began on or before this date and existed for twelve continuous months to receive disability insurance benefits. R. 889; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

initial and reconsideration levels of administrative review. R. 90–110. ALJ John Dawkins held a hearing on July 11, 2017, to consider Christopher's claim for disability insurance benefits, which included testimony from vocational expert John F. Newman. R. 31–89. Christopher was represented by counsel at the hearing. On November 27, 2017, the ALJ entered his decision considering Kenneth's claims under the familiar five-step process[4] and denying his claim for benefits. R. 12–24. On appeal, Judge Elizabeth K. Dillon remanded this case for further administrative proceedings. R. 949–63. On March 17, 2021, ALJ Joseph T. Scruton held a second hearing to consider Christopher's claim for DIB, which included testimony from vocational expert Asheley Wells. R. 909–40. Christopher was represented by counsel at the hearing. On May 4, 2021, ALJ Scruton entered his decision denying Christopher's claim for benefits. R. 885–902.

ALJ Scruton found that Christopher suffered from the severe impairments of degenerative disc disease of the cervical spine, thoracic spine, and lumbar spine and obesity. R. 890. The ALJ found that Christopher's subjective chest pain complaints and anxiety were medically determinable impairments but that they did not cause more than a minimal limitation in his ability to perform basic work activities and were non-severe. R. 891. ALJ Scruton determined that Kenneth's severe impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 891–94.

---

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the RFC, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

ALJ Scruton concluded that Christopher retained the RFC to perform light work, except the claimant cannot crawl or climb ladders, ropes, and scaffolds; can occasionally stoop, crouch, and climb stairs; can frequently but not constantly reach, handle, and finger with both arms; and cannot have exposure to hazards. R. 895–900.

The ALJ determined that Christopher was unable to perform any past relevant work. R. 900. The ALJ also determined that Christopher could perform other work that exists in the national economy such as night cleaner, price marker, and mail clerk. R. 900–01. Thus, the ALJ concluded that Christopher was not disabled. R. 901. Christopher appealed and the Appeals Council denied his request for review on May 25, 2022. R. 878–881.

## ANALYSIS

I.  **Medical History Overview**

  a.  Physical Health Treatment

Christopher was involved in a motor vehicle accident in 2002 during which he injured his back. R. 896. Since that time, medical records show that he has mild spondylosis throughout his spine, but his straight leg raise tests have consistently shown negative results and his range of motion is consistently normal. Id.

Christopher saw a surgeon for lower back pain in 2011, at which point Christopher had some L5 spondylosis, compression of the thecal sac, and disc space narrowing. Id. The surgeon referred Christopher to Dr. Murray Joiner, M.D., who recommended physical therapy and epidural steroid injections. R. 896–97. Christopher declined the injections. R. 897. Christopher attended two pain management appointments for his back in 2012, during which the provider observed muscle tenderness but normal strength, reflexes, sensation, and muscle tone and bulk. Id.

During routine treatment from his primary care practitioner from 2010 to 2014, Christopher displayed tenderness along the paraspinal muscles, but otherwise the examinations were unremarkable. Id. He again declined injections. Id. Christopher reported in 2014 that his back pain had improved and that he had regularly been riding his bike. Id. Physical examination during the 2014 visit to his primary care practitioner was unremarkable. Id.

Dr. William Humphries, M.D., performed a consultative examination of Christopher in 2015. Id. Dr. Humphries observed tenderness throughout the back but no significant deformity or spasm. Christopher's straight leg raising was negative, he had normal reflexes and sensation, and he had normal grip strength. Id.

In August 2017, Christopher complained of lower back pain because he had been moving and packing that week. Id. He had negative straight leg raising and no tenderness in the lumbar spine. Id. In February 2018, Christopher saw his primary care practitioner and complained of right shoulder pain and bilateral ankle pain. Id. The practitioner did not note any abnormal findings in the ankles or spine. R. 898. During a follow up in May 2018, Christopher said that his back pain was improving, and he had an unremarkable physical examination. Id.

  b. <u>Mental Health Treatment</u>

Christopher's primary care practitioner managed his anxiety from 2010 to 2015, including through prescription of Ativan or Valium as needed. R. 891. Christopher was twice prescribed a selective serotonin reuptake inhibitor (SSRI), but he never took it for more than a few days. Id. In July 2016, Christopher informed his primary care practitioner that his anxiety was worse and that his valium was not working so his doctor discontinued Valium and prescribed Klonopin to use as needed. R. 892. One month later, Christopher reported that he had

only had to use the Klonopin once and felt that his mood had improved. The primary care doctor observed that Christopher had normal mood and affect and continued the Klonopin as needed. Id.

In 2017, Christopher stopped using his medication and maintained a normal mood and affect. Id. In 2018, Christopher requested to restart anxiety medicine and reported that in the past, he had never used a daily anxiety medication for more than two days at a time. Id. His primary care doctor prescribed Celexa but observed no mental status abnormalities. Id. In May 2018, Christopher reported that his mood had improved, and that he had normal speech, behavior, judgment, thought content, cognition, and memory. Id. He did not display any mental status abnormalities during the rest of 2018. Id.

    c. Medical Opinions

On March 3, 2015, state agency medical consultant Julie Jennings, PhD, conducted a mental assessment and concluded that Christopher's anxiety was nonsevere. Dr. Jennings stated that Christpher's mental status exams were grossly normal throughout the entire evaluation period, that he has never been referred for further mental health treatment, nor has he ever been hospitalized. R. 95. The ALJ attributed significant weight to Dr. Jennings' opinion. R. 892. The ALJ reasoned that Dr. Jennings' "high level of understanding of the Social Security disability program" and "review of all the available evidence in the record" provided a strong basis for Dr. Jennings's opinion. Id. The ALJ also reasoned that "there exist a number of other reasons to reach similar conclusions," including that Christopher routinely demonstrated a normal mental status, albeit with an anxious mood, and that when Christopher took his medicine, he reported benefits from doing so. Id.

Dr. Humphries rendered the opinion that Christopher could perform light exertional work with no postural, manipulative, or environmental limitations R. 899. The state medical consultant

Dr. Robert McGuffin, M.D., determined that Christopher could sustain light work with no other significant limitations. Id. The ALJ gave significant weight to these two opinions but added that Christopher should be limited to only occasional stooping, crouching, and climbing stairs. Id. The ALJ also stated that Christopher should not climb ladders or crawl. Id. The ALJ based these additional limitations on Christopher's complaints of back pain as well as findings of tenderness to palpation. Id. The ALJ further found that Christopher's complaints of neck pain and difficulty with grip strength, despite the lack of objective evidence of reduced grip strength, warranted a limitation to only frequent reaching, handling, and fingering. Id.

      The ALJ accorded less weight to the functional capacity evaluation performed by Lucas Physical Therapy, which found that Christopher had no functional deficits, only pain. Id. The ALJ stated that the report failed to sufficiently account for Christopher's subjective complaints. Id. The ALJ also attributed little weight to the opinion of Dr. Catherine Rae, Christopher's primary care practitioner, who stated that Christopher can lift no more than twenty pounds frequently, and no more than frequent bending, pushing, pulling, or twisting, and no prolonged standing over one to two hours, but that he could immediately return to light duty. Id. The ALJ found that the opinion was made in April 2012 and was not based on recognized disability criteria. Further, the ALJ reasoned that Christopher had only seen Dr. Rae sporadically. Id.

      The ALJ also attributed little weight to Dr. Chapmon's opinion that Christopher can work in some capacity, on a full time basis, and would have less restrictions if he completed the physical therapy he engaged in during 2013 therapy sessions. R. 900. The ALJ reasoned that Dr. Chapmon did not evaluate sufficient information in reaching his conclusion, including medical records that indicate Christopher has a full range of motion and strength throughout his body, with no deficits except for subjective reports of pain. Id. Further, the ALJ noted that Dr.

7

Chapmon's treatment notes show that Christopher had a normal range of motion, normal curvature, and 5/5 strength throughout his neck and back. Id.

## II. Physical Impairments and Substantial Evidence

Christopher argues that the ALJ "ignored significant evidence contrary to the findings in his decision." Pl.'s Br. at 26, Dkt. 16. Specifically, Christopher argues that the ALJ "failed to note that [his] MRI and X-ray findings have been abnormal since 2011." Id. Christopher further asserts that the ALJ ignored evidence that he had participated in physical therapy to no avail, and that the ALJ "cherry pick[ed] the evidence to support his findings while ignoring significant objective evidence of record documenting [Christopher's] impairments." Id. Namely, Christopher alleges that the ALJ referenced negative straight leg raise tests, observations of normal gait, and that Christopher does not use of an assistive device to walk but did not acknowledge that he has positive straight leg raise tests, instances of reduced lumbar range of motion, and antalgic gait. Id. He also asserts that the ALJ "failed to make any specific findings regarding [Christopher's] inability to maintain a static work posture, his need to lie down during the day, or his rate of unacceptable absenteeism. Id. Christopher claims that because of the lack of these specific findings, the ALJ did not present proper hypotheticals to the vocational expert. Id. The Commissioner responds that Christopher's assertions request that I "reweigh the evidence in order to reach a conclusion that is more favorable to him." Def.'s Br. at 15, Dkt. 18.

The ALJ is required to develop an adequate RFC that accounts for the work activities the claimant can perform given the physical or mental impartments affecting his ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8P, 1996 WL 374184 (S.S.A. July 2, 1996). The ALJ is instructed to cite specific medical facts and non-medical evidence supporting

8

his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8P, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d 632, 636 (4th Cir. 2015) (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D. W. Va. Apr. 29, 2015).

Here, the ALJ properly explained how the RFC accounts for Christopher's physical impairments and provided the necessary medical and non-medical facts and evidence to support his conclusions. Christopher alleges that the ALJ supported his RFC findings with reference to only two exhibits, the records of Christopher's primary care practitioner—constituting 312 pages—and a functional capacity evaluation conducted by Lucas Therapies. Pl.'s Br. at 28 (citing R. 483–794, 849–69). However, the ALJ discussed numerous medical records in addition to those two exhibits, including those of Dr. James M. Leipzig, M.D., a spinal specialist, and Dr. Murray E. Joiner, M.D., a pain management specialist. R. 896–97 (citing R. 302–14). Further, the ALJ does not have to address every piece of inconsistent evidence, Smith v. Colvin, No.

9

1:12cv1247, 2015 WL 3505201, at *7 (M.D.N.C. June 3, 2015); see also Brittani v. Sullivan, 956 F.2d 1162 (4th Cir. 1992); rather, the ALJ must author an opinion which shows how the evidence of record supports the decision made.

Attacking whether substantial evidence exists requires more than simply identifying medical records or statements that are inconsistent with the ALJ's findings. A claimant must show that the ALJ used an improper legal standard, did not consider a relevant portion of the record, did not satisfy the duty of explanation, or the overwhelming weight of inconsistent evidence overcomes the very low substantial evidence standard. The Fourth Circuit has been clear that an ALJ's findings "as to any fact, if supported by substantial evidence, shall be conclusive." Hart v. Colvin, No. 5:169cv32, 2016 WL 8943299, at *3 (N.D.W. Va. Sept. 14, 2016) (quoting Walls v. Barnhart, 296 F. 3d 287, 290 (4th Cir. 2002)). Here, Christopher has done no more than question the ALJ's conclusion.

Contrary to Christopher's contentions, the ALJ provided a detailed summary of Christopher's physical impairments, medical records, testimony, and opinion evidence. The ALJ was required to create a narrative discussion that builds "an accurate and logical bridge from the evidence to his conclusion," which the ALJ did in his discussion of the medical and non-medical evidence, Christopher's alleged symptoms, and the medical opinions of record. This narrative discussion allows this court to see how the evidence in the record—both medical and non-medical—supports the RFC determination. Because I was not "left to guess" at how the ALJ reached his RFC determination, I find that the ALJ's conclusion is supported by substantial evidence. Mascio, 780 F.3d at 637.

### III. Mental Impairments and Substantial Evidence

Christopher argues that the ALJ failed to properly support his mental assessment with

substantial evidence. Specifically, Christopher asserts that the ALJ failed to support his finding that Christopher had a non-severe mental impairment of anxiety disorder with substantial evidence. Pl.'s Br. at 30.

Christopher alleges first that the ALJ incorrectly stated that Christopher rarely complained of anxiety to his providers. Id. at 29. He claims that his history of medication, including prescriptions for Klonopin, Valium, and Lexapro, combined with his inability to concentrate for more than twenty to thirty minutes at a time, indicate that that Christopher received ongoing treatment for anxiety. Id. at 29–30. In contrast to Christopher's allegations, the ALJ included a detailed narrative addressing Christopher's history of anxiety. R. 891–94. The ALJ discussed Christopher's medication history, noting that although he was "noted not to not be medication compliant," he "had a prescription to use Ativan or Valium as needed for anxiety," and that "he was prescribed an SSRI for anxiety, but he never took it for more than a few days." Id. at 891. The ALJ discussed Christopher's history of treatment for anxiety from 2010 to 2018, with detailed references to individual treatment records in 2013, 2015, 2016, 2017, and 2018. Id. at 891–92.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe, 826 F.3d at 189 (emphasizing that the ALJ must "build an accurate and logical bridge

from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

In Shinaberry v. Saul, the Fourth Circuit clarifies that an "ALJ cannot summarily 'account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work,' because 'the ability to perform simple tasks differs from the ability to stay on task.'" Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020) (quoting Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)). However, Mascio does "not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." Id. In contrast, Shinaberry highlights "sister circuits" who conclude that "limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations [in concentration, persistence, or pace]" when the "medical evidence demonstrates that a claimant can engage in simple, routine tasks, or unskilled work, despite [these] limitations." Id. (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). Shinaberry further confirms that Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC, but instead underscores the ALJ's duty to adequately review the evidence and explain the decision. See also Monroe, 826 F.3d 176 (emphasizing that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and specifically applying the law to the record).

Here, the ALJ explained why Christopher's mild limitations in concentration, persistence, or pace did not translate into a limitation in the RFC beyond that imposed. The ALJ specifically acknowledged that Christopher reported being stressed when he had to care for his children, a

12

task that the ALJ noted requires significant concentration. R. 894. However, the ALJ reasoned that Christopher "often reported adequate symptom control from psychiatric medications when he actually took them," and that "treating practitioners did not observe that the claimant was distractible or slow." Id.

Christopher further asserted that the ALJ stated that Christopher "has never been hospitalized for mental impairments," and that the ALJ "ignored the fact that [Christopher] was hospitalized for his anxiety in September of 2012." Pl.'s Br. at 30. However, the ALJ did not assert that Christopher had never been hospitalized for mental impairments, but rather that "he has never been *referred* for hospitalization." R. 891 (emphasis added).

The ALJ provided a lengthy narrative discussion of Christopher's allegations, treatment records, and opinion evidence regarding his mental health limitations. The ALJ considered Christopher's allegations of stress in situations that demanded high levels of concentration. The ALJ explained how the RFC is supported by Christopher's mental health treatment records and carefully analyzed each facet of his mental health impairments. Accordingly, I find that the ALJ's assessment of Christopher's impairments was sufficient under SSR 96-8P.

IV. **Subjective Allegations**

Christopher argues that the ALJ's assessment of his allegations is not supported by substantial evidence. Pl.'s Br. at 31. Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence

13

showing a condition that could reasonably produce the alleged symptoms, such as pain.[5] Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

      Here, the ALJ found that Christopher's medically determinable impairments could reasonably be expected to cause the alleged symptoms. R. 898. However, the ALJ found that Christopher's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. Id. The ALJ noted that Christopher's complaints of "persistent back pain are well documented in the medical evidence, but his activity level suggests the pain does not severely limit him." Id. The ALJ cited to Christopher's reported activities of bike riding for ten miles, hanging Christmas lights, hiking, caring for two young children, and crawling under vehicles to do maintenance. Id. The ALJ further supported his conclusion with Christopher's medical records, which "show a full range of motion and strength throughout his body, negative results on the straight leg raise tests, an ability to get on and off the examination table without difficulty, a normal gait, ability to

---

[5] SSR 16-3p states that a claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

perform the heel and toe walk, and no use of an assistive device to ambulate." Id. With respect to Christopher's complaints of anxiety, the ALJ noted that "treatment has been generally successful in controlling those symptoms," but that Christopher has not been "medication compliant." Id. at 891, 898.

It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996); see also Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that the ALJ supported his analysis of Christopher's subjective complaints with substantial evidence, and that Christopher is capable of performing work at the level stated in the ALJ's opinion.

## CONCLUSION

I **GRANT** summary judgment to the defendant, **DENY** Christopher's motion for summary judgment, and **DISMISS** this case from the Court's docket.

Entered:  August 9, 2023

*Robert S. Ballou*

Robert S. Ballou
United States District Judge